UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**REGINA BENNETT**
    Plaintiff

**v.**                                                                                                              No. 5:07CV-00038-J

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Mark Pierce. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 15 and 18, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on May 12, 2006, by administrative law judge (ALJ) James Craig. In support of his decision denying Title II and Title XVI benefits, Judge Craig entered the following numbered findings:

    1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

    2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

    3. The claimant has the following severe impairment: degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

    4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

     5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to engage in sedentary work activity. She can lift and carry up to 10 pounds but is unable to stand or walk for prolonged periods of time. She is unable to push or pull with her upper and lower extremities and must be able to sit and stand as needed. She is limited in her ability to perform overhead work and should avoid kneeling and crawling. She should no more than occasionally stoop or crouch and avoid exposure to weather, hot and cold temperatures, wet and humidity environments, moving mechanical parts, work at high places and electrical shock. She is unable to carry out detailed instructions and make complex decisions.

     6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

     7. The claimant was born on November 28, 1958 and was 44 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 CFR 404.1563 and 416.963).

     8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

     9. Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568 and 416.968).

     10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

     11. The claimant has not been under a "disability," as defined in the Social Security Act, from October 19, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 18-21).

### Governing Legal Standards

     1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial

evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

    2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant

number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Discussion

On February 13, 2006, the plaintiff was examined, at the request of counsel, by orthopedic surgeon Claude Saint-Jacques, M.D. Dr. Saint-Jacques provided a narrative report and completed the Physical Residual Functional Capacity Questionnaire (AR, pp. 266-271). Judge Craig stated that he "considered the opinion of Dr. St. Jacques but does not find this opinion entirely persuasive" (AR, p. 20).

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony, at the administrative hearing, of a vocational expert (VE). The controlling vocational hypothetical appears in the administrative record at page 315. Whereas Dr. Saint-Jacques found that the plaintiff can sit for four hours and stand or walk for four hours in an eight-hour day for about thirty minutes at a time, Judge Craig's hypothetical permitted a more plaintiff-favorable blanket "need to sit and stand during the day as comfort dictates" (AR, p. 315). Having compared the limitations identified by Dr. Saint-Jacques in his Questionnaire and those contemplated by the hypothetical, the magistrate judge concludes that the ALJ implicitly accepted the findings of Dr. Saint-Jacques except for those findings that would necessarily preclude all types of full-time employment, including the following per-se disabling limitations:

5

    1. The plaintiff is incapable of even low stress jobs.

    2. The plaintiff will need to take unscheduled breaks away from the work site at least four times a day for twenty to thirty minutes at a time.

    3. Somewhat inconsistently, Dr. Saint-Jacques found that, although the plaintiff's impairments will not likely produce "good days" and "bad days," she nevertheless will require absences from work as a result of her impairments or treatment of more than four times a month.

    The plaintiff's first numbered contention is that "the residual functional capacity (RFC) actually determined by the administrative law judge (ALJ) proves disability" (Docket Entry No. 15, p. 1). The argument is that the ALJ's RFC Finding No. 5 that the plaintiff "must be able to sit and stand as needed" (i.e., that the plaintiff requires a sit-stand option) requires a conclusion of disability as a matter of law because "sedentary" work requires sitting "67 to 100 percent of the time and only allows for position changes three times per 8 hours" (p. 2), citing Social Security Rulings (SSR) 83-10, 83-12, 96-8p, and 96-9p and *Preston v. Secretary*, 854 F.2d 815 (6th Cir.,1988), *Howse v. Secretary*, 782 F.2d 626 (6th Cir., 1986), and *Wages v. Secretary*, 755 F.2d 495 (6th Cir., 1985).

    The magistrate judge concludes that the plaintiff's argument is unpersuasive for at least three reasons. First, for the most part, the cited Rulings purport to define only the requirements of the <u>full range</u> of sedentary work. A fifth-step denial decision may be supported even if a claimant is unable to perform the full range of sedentary work. The only requirement is that the jobs that the Commissioner finds the claimant can perform represent a significant number of jobs in the national economy.

The Rulings repeatedly caution that, if non-exertional impairments are present, which may be expected to significantly erode the occupational base for the full range of sedentary work, the Commissioner should consult specific vocational resources and/or call upon the services of a VE to determine whether a claimant can perform a significant number of sedentary jobs. Hence, an ALJ's fifth-step finding that a claimant is able to perform sedentary jobs may constitute a reversible error if non-exertional impairments are present and no VE testified at the administrative hearing. In *Howse* and *Wages*, no VE testified. Hence, these cases are readily distinguishable from the present case in which Judge Craig's identification of jobs was premised upon VE testimony that was tailored to the plaintiff's actual exertional and nonexertional limitations. *Preston* is distinguishable from the present fifth-step denial decision because it was a fourth-step case. Contrary to the plaintiff's argument as a whole, the Sixth Circuit has specifically affirmed the Commissioner's decision where a VE testified that a claimant who is limited to sedentary work with a sit-stand option can nevertheless perform a significant number of jobs in the national economy. See *Bradley v. Secretary*, 862 F.2d 1224 (6th Cir., 1988).

Second, the plaintiff's argument is unpersuasive because, to the extent the cited Rulings indicate that there are only an insignificant number of sedentary jobs in the national economy that do not require sitting for prolonged periods of time and that allow for a sit/stand option, the Rulings refer only to <u>unskilled</u> sedentary work. There is no indication that Judge Craig intended to limit the plaintiff to only unskilled work. On the contrary, in response to Judge Craig's hypothetical, the VE identified 278,000 jobs in the national economy that are "low level detailed, SVP 3" (AR, p. 316). Furthermore, in his written decision, the ALJ cited Medical-Vocational Rule 201.28 as a framework for decisionmaking. The cited Rule contemplates previous work experience that was "skilled or semiskilled."

7

Third, the argument is unpersuasive because, even if Judge Craig did explicitly or implicitly limit the plaintiff to unskilled sedentary work with the need for a sit/stand option, the plaintiff has cited no authority for the proposition that a finding of disability is required as a matter of law. The plaintiff argues that *Johnson v. Barnhart*, 2006 WL 373896 (W.D.Mo., 2006), supports her position and has appended a copy of *Johnson* to her fact and law summary. The plaintiff interprets *Johnson* as holding that an ability to "sit no more than one hour continuously" is incompatible with the requirements of sedentary work (Docket Entry No. 15, p. 2). However, in *Harcourt v. Barnhart*, 2007 WL 141931 (S.D.Ind.), the district court rejected such an expansive interpretation of *Johnson* for the following reasons:

> II. Use of the Sit/Stand Option
>
> Ms. Harcourt argues that the ALJ impermissibly used a "sit/stand" option in denying her claim. Pl. Br. at 8-9. She bases her argument on Social Security Ruling (SSR) 83-12 and Johnson v. Barnhart, No. 04-3438-CV-W-HFS, 2006 WL 373896, at *8 (W.D.Mo.2006), which relied on SSR 83-12 to hold that a claimant limited to unskilled work with a sit/stand option was disabled.
>
> SSR 83-12 explains: "In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base," which is what the ALJ did in this case. This court does not read Johnson as adopting a blanket finding that no unskilled jobs allow a sit/stand option. The vocational expert in Johnson initially had testified that the claimant could have worked some light and sedentary unskilled jobs, but when confronted with SSR 83-12, apparently conceded that his testimony was inconsistent with it. 2006 WL 373896 at *8. Whatever the testimony was in that particular case, it is clear that SSR 83-12 itself does not adopt a view that no unskilled jobs allow a sit/stand option:
>
> Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base.

> SSR 83-12,1983 WL 31253, *4 (emphasis added). The ALJ in this case followed the instruction of the second quoted sentence and relied on the vocational expert's testimony to find that Ms. Harcourt would be able to do some unskilled jobs that have sit/stand options.
>
> In Powers v. Apfel, 207 F.3d 431 (7th Cir.2000), the Seventh Circuit explicitly rejected the argument that the plaintiff advances here. The vocational expert in Powers testified that a number of unskilled jobs had a sit/stand option. The Seventh Circuit reasoned that the description in SSR 83-12 of what is the case "ordinarily" does not refute the specific testimony of a vocational expert testifying at the hearing in response to a specific question. 207 F.3d at 436. That reasoning applies directly to this case.

The magistrate judge concludes that the plaintiff's reliance upon *Johnson* is unpersuasive for the reasons identified in *Harcourt*.

Next, the plaintiff asserts that, at the administrative hearing, Judge Craig implicitly acknowledged that the VE's testimony was inconsistent with the Dictionary of Occupational Titles (DOT) when he asked the VE "[o]ther than the sit and stand option, is your testimony consistent with the [DOT]?" (AR, p. 317). The magistrate judge concludes that, in context, although his wording was perhaps unfortunate, it is apparent that Judge Craig was acknowledging only the fact that the DOT does not address sit-stand options but rather directs the decisionmaker to obtain VE testimony. Hence, there was no genuine conflict or inconsistency. The VE had already done what he was required to do, which was to address the limitations not contemplated by the DOT. If counsel believed that there was an actual conflict between the VE's testimony and the DOT, he should have explored the matter at the hearing rather than first complaining upon judicial review. At the hearing, counsel simply stated that he had "no questions, your Honor," and the hearing was concluded.

9

Next, the plaintiff mentions several cases pertaining to the vocational impact upon the full range of unskilled sedentary work of reduced bimanual dexterity. The relevance of these cases is unclear to the undersigned as neither Judge Craig nor Dr. Saint-Jacques appears to have identified any significant problems with respect to the plaintiff's bimanual dexterity. Dr. Saint-Jacques found that the plaintiff is capable of engaging in gross and fine manipulation of the hands and fingers of both upper extremities up to 80% of the workday (AR, p. 271). If counsel believed the plaintiff lacked sufficient dexterity to perform the jobs identified by the VE, he should have explored the matter at the hearing by way of cross-examination of the VE and presentation of alternative hypothetical limitations supported by the record.

Next, the plaintiff argues that the ALJ's decision was flawed because the hypothetical "significantly varied" from the ALJ's Finding No. 5 (Docket Entry No. 15, p. 3). Whereas the hypothetical contemplated "no <u>repetitive</u> *(emphasis added)* pushing or pulling in the upper or lower extremities" and "no above-shoulder work" (AR, p. 315), Finding No. 5 states that the plaintiff is "<u>unable</u> *(emphasis added)* to push or pull with her upper and lower extremities and ... is limited in her ability to perform overhead work." There is no evidence that the plaintiff is precluded from all pushing and pulling or that performance of the clerical and cashier jobs identified by the VE requires significant pushing and pulling. Furthermore, because Dr. Saint-Jacques found that the plaintiff will have "significant limitations in doing repetitive reaching" and that she can reach overhead with her arms only 5% of the workday (AR, pp. 270-271), the limitations stated in the hypothetical are supported by the record. The magistrate judge concludes that any variance between the hypothetical and Finding No. 5 was, at worst, harmless error.

The plaintiff's second numbered contention is that "the ALJ's evaluation of Ms. Bennett's pain and credibility is not supported by substantial evidence and fails to comport with the applicable legal standards, including 20 CFR 404.1529 and SSR 96-7p" (Docket Entry No. 15, p. 4). As indicated above, the ALJ's findings are consistent with those identified by the plaintiff's own consultative source, Dr. Saint-Jacques, except for those that were tantamount to a conclusion of disability. Opinions from medical sources that "would direct the determination or decision of disability" are "reserved to the Commissioner" and are entitled to no "special significance." 20 C.F.R. § 404.1527(e). The Commissioner's credibility determination is an open-ended multi-factors approach. See 20 C.F.R. § 404.1529 ("How we evaluate symptoms, including pain") and SSR 96-7p. Absent a compelling reason, a reviewing court should not disturb an ALJ's credibility findings. *Smith v. Secretary*, 307 F.3d 377, 379 (6th Cir., 2001). The ALJ and not a reviewing court or any medical source is to make credibility findings regarding a claimant's subjective complaints. *Murphy v. Secretary*, 801 F.2d 182, 184 (6th Cir., 1986). The magistrate judge concludes that the plaintiff has failed to show that the ALJ acted outside his province or abused his discretion in declining to accept the per-se disabling limitations assigned by Dr. Saint-Jacques.

The plaintiff's third and final numbered contention is that "the ALJ's evaluation of the medical evidence is not supported by substantial evidence and not in compliance with 20 CFR 404.1527 and SSR 96-2p" (Docket Entry No. 15, p. 6). The argument is premised upon the ALJ's refusal to accept the disabling limitations assigned by Dr. St. Jacques. It is unpersuasive because, as previously stated, the Commissioner is not required to accept such restrictions. See 20 C.F.R. § 404.1527(e).

**RECOMMENDATION**

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).